# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

SHARON K. CORNELISON,    )
    )
        Plaintiff,    )
    v.    )    Case No. CIV-16-453-SPS
    )
COMMISSIONER of the Social    )
Security Administration,    )
    )
        Defendant.    )

## OPINION AND ORDER

The claimant Sharon K. Cornelison requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on December 17, 1951, and was sixty-two years old at the time of the administrative hearing (Tr. 66). She has a high school education, and has worked as a splicer (Tr. 67, 81). The claimant alleges she has been unable to work since an amended onset date of April 19, 2011, due to low back problems, diabetes, liver problems, and high blood pressure (Tr. 154, 189).

## Procedural History

On October 21, 2013, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ Douglas S. Stults held an administrative hearing and determined the claimant was not disabled in a written decision dated March 5, 2015 (Tr. 28-38). The Appeals Council denied review, so the ALJ's written decision represents the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b). The ALJ then concluded that, through the claimant's date last insured, December 31, 2011, she was not disabled because she could return to her past relevant work as a splicer (Tr. 37-38).

## Review

The claimant contends that the ALJ failed to properly: (i) consider new evidence submitted to the Appeals Council, (ii) account for her non-severe impairments in formulating her RFC, and (iii) assess her credibility. The Court finds these contentions unpersuasive for the following reasons.

The ALJ determined that the claimant had the severe impairments of diabetes mellitus, obstructive sleep apnea, obesity, and hypertension, but that the residual effects of her December 2010 left shoulder arthroscopy and degenerative disc disease (status post lumbar discectomy and laminectomy) were non-severe (Tr. 30-32). The medical record reveals that the claimant often reported a history of depression and/or anxiety and that she was currently taking an anti-depressant medication to her providers, but there is no specific mental health diagnosis until September 2013 (Tr. 413). On September 13, 2013, the claimant reported to Dr. Toridio Vasquez that her mental health had been gradually improving, her symptoms were relieved by medication, and that treatment provided significant relief (Tr. 413). Dr. Vasquez noted the claimant had a normal mood, affect, behavior, judgment, and thought content, and diagnosed her with depression (Tr. 415-16).

As to the claimant's shoulder, the medical records reveal that she underwent a left shoulder subacromial decompression, acromioclavicular joint excision, and manipulation under anesthetic on December 23, 2010 (Tr. 296-310).

The relevant medical records as to the claimant's back reveal that on February 24, 2012, she reported pain in her tailbone for approximately one year, that had increased in the previous two or three months (Tr. 294). On physical examination, nurse practitioner Frelyn Loughridge noted supravertebral pain at the claimant's sacrum and L1 level, as well

as a normal gait (Tr. 294). On March 3, 2012, an MRI of the claimant's sacrum, coccyx, sacral foramina, and sacroiliac joints was normal (Tr. 259-60). An MRI of her lumbar spine taken the same day revealed a desiccated disk from L2-3 through L5-S1, loss of disk height at L5-S1 where a previous laminectomy had been performed, and a small central bulging of the disks at L3-4 and L4-5 (Tr. 257-58, 274). On April 19, 2012, the claimant presented to Dr. Stephen Andrade with pain in her low back that she reported began after she pushed a desk two months earlier, as well as pain in her tailbone that she reported began two or three years earlier (Tr. 270, 273-74). He assessed the claimant with, *inter alia*, acute flare-up of low back pain, tenderness in the left sacroiliac joint region that is suggestive of sacroiliacitis, lumbar disk degeneration with decreased disk height at L5-S1 and disk bulging at L4-5, and coccydynia, and recommended steroid injections and physical therapy (Tr. 274-75). The claimant declined physical therapy, but had an epidural steroid injection and a left sacroiliac injection on May 4, 2012 (Tr. 275-77).

The claimant presented to Dr. Robert Remodino on May 17, 2012, and reported pain in her coccyx area for many years, but that she began having pain in her low back after she pushed a desk on February 10, 2012 (Tr. 289-91). Dr. Remodino stated there was nothing radiographically to indicate that the claimant would ever need any more forms of neurosurgical intervention, but that she did have multiple levels of degeneration that could cause her recurrent discomfort (Tr. 291). He recommended continued conservative treatment, including physical therapy and additional epidural steroid injections (Tr. 291). The claimant again declined physical therapy, but indicated that she wished to pursue additional epidural steroid injections with Dr. Andrade (Tr. 291).

State agency physicians reviewed the record in December 2013 and January 2014 and found the claimant's degenerative disk disease was non-severe, then determined that there was insufficient evidence to make a decision prior to her date last insured of December 31, 2011 (Tr. 84-88, 90-95).

At the administrative hearing, the claimant testified that in April 2011, she experienced pain and numbness in her feet more than half of the day, and constant back pain (Tr. 70-71). She rated the pain in her feet at eight on a ten-point scale, and the pain in her back at seven (Tr. 70-71). She stated that in order to relieve pain, she took ibuprofen and rested or laid down for three hours during the day (Tr. 74). As to specific limitations, the claimant testified that she could walk a matter of feet before needing to stop, and could not walk while holding a gallon of milk (Tr. 76).

In his written opinion at step two, the ALJ found that the claimant's residual effects of a December 2010 left shoulder arthroscopy were non-severe because there were no records showing a history of complaints of left shoulder pain or treatment for shoulder pain after her surgery (Tr. 31). Thus, he concluded that her shoulder problem resolved (Tr. 31). As to her degenerative disc disease status post discectomy and lumbar laminectomy, the ALJ found it was non-severe because she recovered from surgery in 1993, and did not have any further back problems until her injury in February 2012 (Tr. 32). Thus, the ALJ concluded that the claimant did not experience any symptoms, treatment, or diagnosis of a back problem between April 19, 2011 (her alleged onset date) and December 31, 2011 (her date last insured). Additionally, the ALJ gave great weight to the state agency physicians' opinion that the claimant's degenerative disc disease was not a severe impairment prior to

December 31, 2011 (Tr. 32). At step four, the ALJ summarized the evidence with regard to the claimant's severe impairments, and specifically indicated that he considered the combined effect of her severe impairments, but did not mention or discuss her non-severe left shoulder arthroscopy or degenerative disc disease (Tr.18-20).

The claimant contends that the ALJ erred at step four by failing to consider these non-severe impairments. The Court agrees that the ALJ is required to consider all of a claimant's impairments—both severe and non-severe—singly and in combination, when formulating a claimant's RFC. *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two].' "), *quoting Langley v. Barnhart*, 373 F.3d 1116, 1123–24 (10th Cir. 2004), *quoting* 20 C.F.R. § 404.1523. *See also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.' ") [emphasis in original] [citations omitted]. However, the claimant does not point to any evidence in the record showing that her non-severe impairments, either individually or in combination with her other impairments, caused functional limitations during the relevant time period of April 19, 2011, her alleged onset date, and December 31, 2011, her date last insured. *See Welch v. Colvin*, 566 Fed. Appx. 691, 695 (10th Cir. 2014) (finding harmless any error the ALJ made by not considering the combined effects of all of the claimant's impairments since there was no evidence that such impairments restricted the claimant's

ability to work). As the ALJ noted, there is no evidence of any treatment related to shoulder pain following the claimant's surgery on December 23, 2010, nor is there any evidence of treatment for back problems following her 1993 discectomy and lumbar laminectomy until *after* her date last insured (Tr. 32, 294, 270, 273-74).

The claimant also asserts that the evidence she submitted to the Appeals Council was not properly considered. Following the issuance of the ALJ's written opinion, additional evidence was submitted to the Appeals Council, including: (i) treatment notes from Dr. Savage between August 19, 2014, through November 10, 2014; (ii) a December 23, 2014, treatment note from Dr. Fong; (ii) a lumbar spine CT scan dated February 3, 2015; and (iii) a discharge summary from the claimant's physical therapist dated March 18, 2015 (Tr. 15-24). In denying the claimant's request for review, the Appeals Council determined that the newly submitted evidence related to a time after the claimant's date last insured, and thus did "not affect the decision about whether [she was] disabled at the time [she was] last insured for disability benefits." (Tr. 2).

The Appeals Council must consider new evidence submitted for the first time on appeal if the evidence is "(1) new, (2) material, and (3) related to the period on or before the date of the ALJ's decision." *Krauser v. Astrue,* 638 F.3d 1324, 1328 (10th Cir. 2011). When the Appeals Council decides to consider new evidence that was not presented to the ALJ, the new evidence becomes part of the administrative record and a district court must consider the new evidence when evaluating the Commissioner's decision to deny a claim for disability benefits. *See O'Dell v. Shalala,* 44 F.3d 855, 859 (10th Cir. 1994). The evidence submitted to the Appeals Council is clearly new; however, the Court finds that it

is neither material, nor related to the period on or before the date of the ALJ's decision. Evidence is material "if there is a reasonable possibility that [it] would have changed the outcome." *Threet v. Barnhart,* 353 F.3d 1185, 1191 (10th Cir. 2003), *quoting Wilkins v. Sec'y Dep't Health & Human Servs.,* 953 F.2d 93, 96 (4th Cir. 1991). The evidence must "reasonably [call] into question the disposition of the case." *Id. See also Lawson v. Chater,* 1996 WL 195124, at *2 (10th Cir. April 23, 1996). Here, the new evidence does not appear to implicate a different outcome because Dr. Savage's treatment notes reflect that the claimant's symptoms improved after epidural steroid injections, Dr. Fong's physical examination was normal, and the claimant was discharged from physical therapy for non-compliance (Tr. 15, 20-21, 49, 56). Additionally, the evidence is chronologically relevant only if it pertains to the time "period on or before the date of the ALJ's Decision." *Kesner v. Barnhart,* 470 F.Supp.2d 1315, 1320 (D. Utah 2006), *citing* 20 C.F.R. § 404.970(b). In this case, the Appeals Council noted the new evidence related to the claimant's condition *after* her date last insured of December 31, 2011, and this is borne out by the record. The claimant established care with Dr. Savage on August 14, 2014, and she established care with Dr. Fong on December 23, 2014 (Tr. 18-19, 44-48). Dr. Fong ordered a CT scan at the claimant's initial appointment, which was conducted on February 3, 2015 (Tr. 19-21). Thus, the new evidence provides additional support for the ALJ's determination that the claimant did not suffer from back problems during the relevant period, and there is not a reasonable possibility that these medical records would have influenced the ALJ's decision.

Finally, the claimant contends that the ALJ erred in analyzing her credibility. Under the applicable standard at the time of the ALJ's decision, a credibility determination would be entitled to deference unless there is some indication that the ALJ misread the medical evidence as a whole. *Casias,* 933 F.2d at 801. An ALJ could disregard a claimant's subjective complaints of pain if unsupported by any clinical findings. *Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987). But the ALJ's credibility findings were required to be "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [citation omitted]. A credibility determination "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.' " *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996). In this case, the Court finds that the ALJ referenced the appropriate regulation, and cited evidence supporting his reasons for finding that the claimant's subjective complaints were not believable to the extent alleged, *i. e.*, he gave clear and specific reasons that were specifically linked to the evidence in the record. Specifically, the ALJ noted: (i) the normal findings on examination; (ii) an absence of end organ damage due to diabetes or hypertension; (iii) the long period of time between her date last insured and her filing date; (iv) the majority of the medical records were dated in 2012, after her onset date and date last insured; (v) she has diverticulosis as opposed to diverticulitis; (vi) an x-ray that showed mild thoracic spondylosis and mild interstitial fibrosis with no acute abnormality; (vii) the absence of a mental impairment; (viii) non-compliance with sleep apnea treatment; (ix) non-compliance with physical therapy; (x) the

claimant's testimony that she could walk fifty yards, and ride in and drive automobile; and (xi) the claimant's daily activities (Tr. 36-37). Accordingly, the ALJ's determination here is entitled to deference and the Court finds no error in analyzing the claimant's credibility.[2]

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 26th day of March, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**

---

[2] The Court notes that the Social Security Administration eliminated the term "credibility" in Soc. Sec. Rul. 16-3p, 2016 WL 1119029 (Mar. 16, 2016), and has provided new guidance for evaluating statements pertaining to intensity, persistence, and limiting effects of symptoms in disability claims. The Court finds that even under the new standard, the ALJ properly evaluated the claimant's credibility.